NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

COPPER STATE FINANCIAL MANAGEMENT, LLC, *Plaintiff/Appellee*,

*v.*

MARIA T. ESPIRITU and REDENTOR ESPIRITU, husband and wife,
*Defendants/Appellants*.

No. 1 CA-CV 15-0275
FILED 5-24-2016

Appeal from the Superior Court in Maricopa County
No.  CV2012-093531
The Honorable David King Udall, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

The Hameroff Law Group, P.C., Tucson
By David E. Hameroff, Garrett M. Culver
*Counsel for Plaintiff/Appellee*

Law Offices of Kenneth P. Bemis, Phoenix
By Kenneth P. Bemis
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

¶1        Maria and Redentor Espiritu challenge the trial court's grant of summary judgment to Copper State Financial Management, L.L.C. (Copper State) on a past-due credit card account balance.  For the following reasons, we affirm the summary judgment ruling but vacate the court's award of attorneys' fees and costs to Copper State.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        In May 2012, Copper State filed suit to collect the outstanding balance on a credit card issued to Maria Espiritu[2] and Maria Paoletti.[3] Copper State moved for summary judgment against the Espiritus based upon an affidavit from Ivan S. Lavinksy, who averred he was employed as Copper State's "authorized agent" and acted as a custodian of Copper State's records.  The Lavinsky affidavit referenced and attached copies of the following documents:

---

[1]      We view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the party opposing a motion for summary judgment.  *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003) (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13 (2002)).

[2]      Although Redentor Espiritu was not named on the account, Copper State sued both Maria and Redentor in order to obtain a judgment enforceable against the Espiritus' marital community.  On appeal, the Espiritus do not challenge Redentor's inclusion as a defendant.

[3]      Copper State also named Paoletti in the suit, but she was dismissed prior to entry of judgment and is not a party to this appeal.

- An unsigned form of a Wells Fargo "Consumer Credit Card Customer Agreement & Disclosure Statement" (the Agreement), dated May 2010;

- Billing statements addressed by Wells Fargo Card Services to Maria Espiritu between March 11, 2009 and April 30, 2010, the final statement of which reported an unpaid balance of $15,936.85 and included a charge off[4] of the account principal of $14,600.74 plus account finance charges of $1,336.11;

- Several bills of sale reflecting assignments of accounts from Wells Fargo through various third parties to Copper State; and

- An "Affidavit of Indebtedness" in which Lavinsky attested Copper State purchased the Espiritus' account, the account was assigned to Copper State, and the amount due was $15,936.85 as of April 30, 2010.

¶3        In his affidavit, Lavinsky testified these documents were "true and accurate representations of the data maintained in the normal course of business by the Wells Fargo Bank NA" and the intermediate creditors and sellers identified in the bills of sale, and that the documents were incorporated into Copper State's general business records. Lavinsky averred that he kept and maintained Copper State records, was familiar with "the scope and maintenance of the records kept in the normal course of business by the financial institutions, including Wells Fargo," and therefore knew Wells Fargo "would have entered all transactions relating to the account at or about the time they occurred," and "in the normal course of its business, [Wells Fargo] would have sent monthly billing statements to the cardholder[s]."

¶4        In response, the Espiritus argued Lavinsky's affidavit and the accompanying records were inadmissible. The only evidence they proffered was their own responses to Copper State's requests for admission generally denying responsibility for the account. The trial court granted summary judgment in Copper State's favor and awarded Copper State $3,506.11 in attorneys' fees and $753.00 in costs. The Espiritus timely

---

4        To "charge off" is to "treat (an account receivable) as a loss or expense because payment is unlikely." Black's Law Dictionary (10th ed. 2014).

appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1)[5] and -2101(A)(1).

## DISCUSSION

**¶5** We review a grant of summary judgment *de novo* to determine whether there is any genuine issue of material fact that would preclude entry of judgment as a matter of law. *Russell Piccoli P.L.C. v. O'Donnell,* 237 Ariz. 43, 46-47, ¶ 10 (App. 2015) (citing Ariz. R. Civ. P. 56(a), and *Chalpin v. Snyder*, 220 Ariz. 413, 418, ¶ 17 (App. 2008)). Summary judgment is appropriate where "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309 (1990).

## I. The Trial Court Did Not Err in Considering Copper State's Evidence.

**¶6** On appeal, the Espiritus renew their objections to the trial court's consideration of the Lavinsky affidavit and accompanying records. We review the trial court's rulings on the admissibility of evidence in summary judgment proceedings for an abuse of discretion. *Mohave Elec. Coop., Inc. v. Byers*, 189 Ariz. 292, 301 (App. 1997) (citing *Gasiorowski v. Hose*, 182 Ariz. 376, 382 (App. 1994)).

### A. The Trial Court Did Not Abuse its Discretion in Considering the Lavinsky Affidavit.

**¶7** The Espiritus first argue the Lavinsky affidavit should have been excluded because it does not "set forth [Lavinsky's] qualifications to serve as a custodian/foundational witness for the subject credit card account with Wells Fargo." We disagree.

**¶8** Records of regularly conducted activity are admissible if sufficient foundation is provided by the custodian of the records or other qualified witness. Ariz. R. Evid. 803(6)(D). Here, Lavinsky testified, under oath, that he was familiar with the creation and maintenance of the business records kept at Copper State as well as those Copper State received from previous assignees — including the Wells Fargo records at issue here. The Espiritus accept these avowals, but argue Lavinsky was not an

---

[5] Absent material changes from the relevant date, we cite a statute's current version.

appropriately qualified witness because he did not personally participate in the preparation of the records. But, "courts regularly admit business records even when the testifying witness did not assemble the complete record." *State v. Parker*, 231 Ariz. 391, 401, ¶ 33 (2013) (citations omitted). A person is qualified to authenticate records originally created by another entity if he or his principal "regularly relies on the information that third parties submit as part of their ordinary course of business." *Id.* at 402, ¶ 33 (citing *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007)); *see also MRT Constr. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) ("[R]ecords a business receives from others are admissible . . . when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records.") (citing Fed. R. Evid. 803(6), and *United States v. Childs*, 5 F.3d 1328, 1333-34 (9th Cir. 1993)); *Cont'l Tel. Co. of the W. v. Blazzard*, 149 Ariz. 1, 5 (App. 1986) (finding sufficient foundation for admission of business records where an employee testified regarding how the documents were prepared and maintained by the company's predecessor).

¶9 Here, Lavinsky averred that "it is standard in [the] industry for the financial institution to make the documentation available to the purchaser, and [Copper State] rel[ies] on that documentation to be true and accurate." The Espiritus do not otherwise challenge the trustworthiness or reliability of the documents. Thus, we conclude Lavinsky was qualified to authenticate the records created and maintained by both Wells Fargo and Copper State.

¶10 The Espiritus also contend that Lavinsky, an attorney, cannot act as a custodian of records because attorneys "may not vouch for the credibility of [their] witnesses." But, the Espiritus conflate Lavinsky's being a licensed attorney with his employment as Copper State's custodian of records. Lavinsky did not serve as Copper State's legal counsel in this matter and did not vouch for any witness' credibility in his affidavit; there were no witnesses for whom he could vouch. He simply laid foundation for the admission of the documents. We therefore find no error.

> **B. The Trial Court Did Not Abuse its Discretion in Considering the Records Attached to the Lavinsky Affidavit.**

¶11 The Espiritus next contend the records attached to the Lavinsky affidavit were inadmissible hearsay. Although the records at issue were hearsay, they are nonetheless admissible if they fit within one of the many exceptions to the rule against hearsay. *See* Ariz. R. Evid. 802, 803,

804; *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003) (citing *State v. Bass*, 198 Ariz. 571, 577, ¶ 20 (2000)).

**¶12**        A statement may be admissible as an exception to the hearsay rule if it is a "record of a regularly conducted activity." Ariz. R. Evid. 803(6). The exception is satisfied if:

> [T]he custodian of records or "other qualified witness" testif[ies] that the record was made [(]1) contemporaneously, or nearly so, with the underlying event; [(]2) "by, or from information transmitted by, a person with first hand knowledge acquired in the course of a regularly conducted business activity"; [(]3) completely in the course of that activity; and [(]4) as a regular practice for that activity.

*State v. McCurdy*, 216 Ariz. 567, 571-72, ¶ 9 (App. 2007) (quoting Ariz. R. Evid. 803(6)). The trial court has broad discretion to determine whether business records are sufficiently reliable to satisfy the required elements of Rule 803(6). *Id.* at 571, ¶ 7 (citing *Larsen v. Decker*, 196 Ariz. 239, 243, ¶ 19 (App. 2000), and *State v. Petzoldt*, 172 Ariz. 272, 275 (App. 1991)).

**¶13**        The Espiritus are correct that a mere recitation of the required elements of Rule 803(6) is insufficient to establish the admissibility of records kept in the course of business; the affidavit must substantively address the accompanying evidence so a court may review its accuracy. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 214, ¶¶ 18-20 (App. 2012). In *Allen*, this Court rejected as insufficient evidence submitted in support of a motion for summary judgment because: (1) the affiant only made "a general avowal that he [was] the custodian of records and that he personally reviewed records that established the amount of the [defendants'] indebtedness," but "never claimed to have reviewed any specific documents or to know the manner in which they were prepared and kept," and (2) the referenced records "were neither described nor attached, nor was there anything in the affidavit to provide a reviewing court with the means to evaluate the accuracy of the paralegal's calculation of the amount claimed to be due." *Id.* at 214, ¶¶ 18-19.

**¶14**        The Lavinsky affidavit does not contain those deficiencies. Lavinsky attached the relevant Wells Fargo and Copper State records and described how those records related to the Espiritus' account. He also attached numerous billing statements that identified specific purchases, balances owed, payments made, due dates, and interest charges incurred by the Espiritus. This was sufficient information for the trial court to

evaluate whether the source of the documents or the method or circumstances of preparation were sufficiently trustworthy to warrant admission under Rule 803(6). Having determined Lavinsky was qualified to lay foundation for the documents, we find no abuse of discretion.

## II.     There is No Disputed Issue of Material Fact Regarding the Espiritus' Liability for the Credit Card Debt.

**¶15**        The Espiritus contend Copper State failed to prove "what legal relationship the Espiritus had with this account." However, each billing statement Copper State provided in support of its motion was addressed to Maria, indicating she was the cardholder and therefore legally responsible for the charges. *Cf.* A.R.S. §§ 44-7801(2) (defining "cardholder" to include "the named person who applies for or accepts the credit card account"), -7802 (stating a cardholder accepts the terms and conditions of a credit card account upon any authorized use of the account), -7803 (stating a cardholder is personally liable for all charges incurred by any authorized user).

**¶16**        The Espiritus also argue summary judgment was inappropriate because Paoletti could have been responsible for some, if not all of the debt. However, this fact is immaterial; a cardholder is personally liable for all charges and interest accrued by *any* authorized user. *See* A.R.S. § 44-7803. Thus, even assuming the entirety of the debt was accrued by Paoletti, the Espiritus remain liable, and Copper State is entitled to judgment as a matter of law.

**¶17**        The Espiritus did not dispute the substance of Lavinsky's affidavit and did not create a factual dispute through their general denial of responsibility. *See United Servs. Auto. Ass'n v. DeValencia*, 190 Ariz. 436, 441 (App. 1997) ("When confronted with a motion for summary judgment, the responding party has the burden of presenting evidence that justifies a trial."); *Bible v. First Nat'l Bank of Rawlins*, 21 Ariz. App. 54, 56 (1973) ("[I]n responding to a motion for summary judgment it is the duty of counsel to bring to the attention of the trial court those portions of the record (in the absence of controverting affidavits) which will support his position that a disputed issue of material fact exists."). On the evidence presented, there is no genuine issue of material fact regarding the Espiritus' liability for the account, and we find no error in the entry of summary judgment in favor of Copper State.

### III.    The Statute of Frauds Does Not Apply.

¶18        The Espiritus argue the statute of frauds bars Copper State's claim as a matter of law because the Agreement between the Espiritus and Wells Fargo did not contain Maria's signature.  Under the statute of frauds, certain actions are barred "unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged."  A.R.S. § 44-101(2).

¶19        The Espiritus argue the present action is "to charge a person upon a promise to answer for the debt, default or miscarriage of another." A.R.S. § 44-101(2).  But, this action was brought against the Espiritus to answer for their *own* debt.  Therefore, even disregarding A.R.S. § 44-7802(2) (stating a cardholder's acceptance of the terms and conditions of a credit card account may be established as binding and enforceable simply through authorized use of the account), the action is properly classified as one brought "upon a contract, promise, undertaking or commitment to loan money or to grant or extend credit," which is only barred by the statute of frauds if it "involve[s] both an amount greater than two hundred fifty thousand dollars and [is] not made or extended primarily for personal, family or household purposes."  A.R.S. § 44-101(9).  Neither condition applies here.  Accordingly, Copper State's suit is not barred by the statute of frauds.

### IV.    Copper State Impliedly Concedes Error in the Trial Court's Award of Attorneys' Fees and Costs.

¶20        Finally, the Espiritus challenge the trial court's award of attorneys' fees and costs to Copper State, renewing their objection that Copper State did not provide adequate support for the award as required by Arizona Rule of Civil Procedure 54(g).  We generally review an award of attorneys' fees and costs for an abuse of discretion.  *See In re Estate of Ganoni*, 238 Ariz. 144, 147 (App. 2015) (citing *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 205, ¶ 5 (App. 2015)).  But, Copper State did not address the Espiritus' challenge to the award of attorneys' fees and costs in its answering brief.  We take this omission as a confession of reversible error.  *See Bulova Watch Co. v. Super City Dep't Stores of Ariz., Inc.*, 4 Ariz. App. 553, 556 (1967) ("It is well settled in this jurisdiction that an appellee's failure to [f]ile an answering brief where there are debatable issues constitutes a confession of reversible error.  We believe the principle is equally applicable when an appellee does in fact file a brief which fails to respond to the issues presented.") (citations omitted).  We therefore vacate the award of attorneys' fees and costs to Copper State.

## CONCLUSION

**¶21** For the reasons set forth above, we affirm the trial court's grant of summary judgment in favor of Copper State but vacate the attorneys' fees and costs award below.

**¶22** Copper State requests attorneys' fees and costs on appeal pursuant to the Agreement and A.R.S. § 12-341.01(A), and the Espiritus request attorneys' fees under A.R.S. § 12-341.01(A). Because the record does not contain any agreement signed by the Espiritus authorizing an award of attorneys' fees and costs, the allocation of fees is governed only by statute. In our discretion, we decline to make such an award. *See Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., L.L.C.*, 235 Ariz. 125, 128, ¶ 14 (App. 2014) ("[A]n award of fees under A.R.S. § 12-341.01 is discretionary; it is not an entitlement.") (citing *Assoc. Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985)).



Ruth A. Willingham · Clerk of the Court
FILED: ama